Filed 2/16/21  P. v. Perez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EMMANUEL PEREZ,<br><br>    Defendant and Appellant. | B299876<br><br>(Los Angeles County<br>Super. Ct. No. TA145446) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury found defendant Emmanuel Perez guilty of one count of rape of an unconscious person (Pen. Code,[1] § 261, subd. (a)(4)), and one count of unlawful sexual intercourse (§ 261.5, subd. (c)).  Defendant challenges on appeal the trial court's evidentiary rulings admitting the victim's hearsay statement, excluding defendant's proffered character evidence, and admitting the victim's identification of defendant from a photographic lineup.  He also contends there was insufficient evidence to support his convictions.  We affirm.

# II.  BACKGROUND

## A.  *Procedural History*

On September 20, 2018, the Los Angeles County District Attorney charged defendant by information with one count of rape of an unconscious person and one count of unlawful sexual intercourse.

On April 5, 2019, the jury found defendant guilty of both counts.

On May 23, 2019, the trial court sentenced defendant to six years in prison.  Defendant timely appealed.

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

B.   *Trial*

1.   <u>J.M.</u>

On November 2, 2016, J.M. was 16 years old and attended a high school in Lynwood.  A couple of months prior, J.M. was walking home from school when defendant "hit on" her.  J.M. told defendant her age, but defendant persisted.  When he asked J.M. for her phone number, J.M. responded with her KIK—a type of social media—address.

J.M. agreed to attend a party with defendant on November 2, 2016, which was the first time the two had "h[u]ng out."  They planned to drink alcohol.  Defendant asked what type of alcohol J.M. liked, and J.M. responded that she had no preference.

At about 7:30 p.m., defendant picked up J.M. near her house.  J.M. had smoked a small amount of marijuana that morning.  Defendant brought with him a large bottle of vodka and a small bottle of tequila.  J.M. brought her own canister with which to drink shots.

Defendant asked J.M. if she was truly 16 years old, to which J.M. responded that she was.  Defendant was 25 years old at the time, but he did not disclose his age to J.M.

J.M. drank all the tequila.  Defendant and J.M. both drank the vodka.

As they drove, defendant touched J.M.'s thigh.  J.M. told defendant not to do that.

When they arrived in Long Beach, where they intended to attend a party, J.M. told defendant to pull over into a park so that she could urinate.  J.M. then urinated in a bush.  When she

3

returned, defendant tried to hug her. J.M. told defendant that she "didn't want that" and "to get away."

J.M. was "pretty intoxicated" and dozed off in the car. She awoke in a dark parking lot to defendant kissing her face and touching her thigh. Defendant looked surprised when J.M. awoke and he stopped touching her.

J.M. reentered the car and lost consciousness again. When she awoke, J.M. was alone between two cars in a park near her house. Her belongings were next to her. J.M.'s first thought was that defendant had raped her. J.M. described the basis for her belief as "kind of like intuition." When asked whether J.M. had a "vague memory of some kind of other sexual contact" with defendant, J.M. responded, "No."

J.M. called her sister at around 11:00 p.m. J.M. repeatedly told her sister that "'[t]his guy put his dick in me.'" J.M. was distraught, hysterical, and crying. She sounded scared. J.M. ran home. Her brother eventually called the police.

During cross-examination, defense counsel introduced J.M.'s text messages with defendant. When defendant asked J.M. what she did for fun, J.M. responded that she liked to smoke, referring to marijuana. When defendant asked J.M. if she drank, J.M. stated, "'Of course I do.'" Defense counsel also introduced photographs from J.M.'s Instagram account, one of which depicted a container and the words "'[c]ontainers make the best shot glasses.'" J.M. admitted that she was an "experienced" drinker at the time of the incident and drank whenever she went out.

4

### 2. Leanne Cannon

Cannon was a sexual assault nurse who examined J.M. for sexual assault on November 3, 2016. Cannon described J.M. as tearful, shaky, and cooperative. Cannon recounted what J.M. reported to her: "She remember[ed] meeting the suspect at 2100 at a particular street corner. She was offered a shot of [tequila]. She felt peer pressure to drink it. She remember[ed] sitting in a car listening to music and drinking. [¶] At some point during the evening, [defendant] came in to give her a hug. I believe she had pushed him away and stated no, she wasn't interested. And then she became very sleepy. [¶] Next thing she remember[ed was] waking up in a dark parking lot with the [defendant] on top of her asking her sexual questions. And then following that, things went black. [¶] She had stated that she had felt something inside of her. And then following that, she had woken up in a dark parking lot with no one around her."

During the examination, Cannon observed and photographed the following on J.M.: a possible "suction injury," similar to a hickey, on J.M.'s right breast; possible scratch marks on the left side of J.M.'s neck and lower back; and a "small possible abrasion to the 7 o'clock position" of J.M.'s hymen. Cannon took a blood sample from J.M. at 7:43 a.m. Cannon also took samples from J.M.'s breasts and vulva.

### 3. Malinda Wheeler

Wheeler was a registered nurse who testified as an expert on sexual assault. Wheeler reviewed a photograph of J.M.'s hymen and observed that it depicted a "small red mark which is

actually an abrasion." In Wheeler's opinion, an injury in that location, the hymen, was "from something that penetrated." But she was unable to tell whether the penetration was by "a penis, a finger, or an object." Wheeler further opined that the injury had a "redness" which indicated it had occurred within the prior 24 to 48 hours. Over defense counsel's hearsay objection, Wheeler testified that J.M.'s statement that she felt something inside of her was consistent with blunt force trauma to her hymen.

4.      Criminalists

Shing Kei Thomas Ho was a criminalist with the Los Angeles County Sheriff's crime lab who analyzed J.M.'s blood sample. He concluded that J.M.'s blood alcohol level was .08 percent. In response to a hypothetical regarding a bolus drinking pattern, referring to drinking large amounts of alcohol in a short period of time, Ho opined that a person who began drinking at 7:30 p.m. and stopped drinking at 8:30 p.m. would reach her peak blood alcohol level at 10:00 p.m. Further, "[a]t the time . . . the person reached their peak at 10 p.m., the person's [blood alcohol level] will be any point between .08 and .27."

Stephanie Sandoval was a senior criminalist with the Los Angeles County Sheriff's crime lab. Sandoval analyzed a sample taken from J.M.'s vulva and observed blood and semen. The DNA profile from the sample indicated two contributors: J.M. and defendant.

### 5. Detective Jonathan Bailey

On December 8, 2015, Los Angeles County Sheriff's Department Detective Bailey showed J.M. a six-pack photographic lineup containing defendant's photograph. J.M. identified defendant from the lineup. Bailey then contacted defendant and obtained a DNA sample from him. Bailey believed defendant's photo was taken from Department of Motor Vehicle (DMV) records, but he could not be sure as he did not assemble the photographic lineup.

### 6. Defendant

Defendant testified at trial that J.M. did not tell him her age and he believed J.M. was an adult because she attended a continuation school.

When defendant and J.M. returned to Lynwood from Long Beach, J.M. complained about her ex-boyfriend and tried to kiss defendant. Defendant initially resisted, but eventually licked J.M.'s neck and breasts. J.M. then pulled down her pants and told defendant to "fuck" her. Defendant rubbed his penis on J.M.'s vagina, but could not maintain an erection. Defendant told J.M. that they should just go home early, but J.M. insisted on having sex. J.M. "grind[ed]" on defendant outside the car. When defendant said no, J.M. "got over it" and put her pants back on.

Because they were not far from where defendant had picked up J.M., they walked toward her home. A California Highway Patrol car passed nearby, and defendant told J.M. to walk straight because he did not want a ticket for public drunkenness. According to defendant, J.M. "freaked out, and she

7

went the opposite direction where the officer was going."
Defendant looked for her for about ten minutes but could not find
her. Defendant denied seeing J.M. fall asleep or lose
consciousness.

Defendant denied having sexual intercourse with J.M. He
explained the presence of his semen inside J.M.'s vulva as
follows: "[T]he only thing I could assume is maybe at the time
when I was erect, maybe when I was rubbing my penis on her
vagina, I don't know, maybe it could have been pee [*sic*] cum or
something."

### 7. Defendant's Character Witnesses

Defendant's sisters and friends testified that in their
opinion, defendant was not a sexual deviant or predator and did
not behave inappropriately with other women.

## III. DISCUSSION

### A. *J.M.'s Hearsay Statement*

Defendant contends that the trial court erred by allowing
Wheeler to testify that J.M.'s hearsay statement to Cannon—that
she had felt something inside her—was consistent with the blunt
force trauma to J.M.'s hymen.

### 1. Background

During trial, defense counsel objected on hearsay grounds
when the prosecutor asked Cannon about J.M.'s statement to her.

8

The court overruled the objection finding that J.M.'s statements to Cannon were prior consistent statements that fell within an exception to the prohibition against hearsay.  Cannon then testified about J.M.'s statement that "she had felt something inside her."

When the prosecutor asked Wheeler whether J.M.'s injuries were consistent with J.M.'s report of sexual assault, defendant again objected on hearsay grounds; the court overruled the objection.  Wheeler responded that J.M.'s statement that she felt something inside her was consistent with the blunt force trauma to J.M.'s hymen.

### 2.    Analysis

"We review evidentiary rulings, including ultimate rulings on whether evidence should be excluded as hearsay, for abuse of discretion.  [Citation.]  When a hearsay exception requires foundational findings of fact, we review such findings for substantial evidence."  (*People v. Caro* (2019) 7 Cal.5th 463, 503.)  "'If a judgment rests on admissible evidence it will not be reversed because the trial court admitted that evidence upon a different theory, a mistaken theory, or one not raised below.'"  (*People v. Blacksher* (2011) 52 Cal.4th 769, 806, fn. 21.)

At trial, J.M. testified that aside from defendant trying to kiss her and touch her thigh, she did not recall any other sexual contact with him.  She also testified that her belief that defendant raped her was based on "intuition."  Thus, her prior statement to Cannon that she felt "something inside her" was inconsistent with her trial testimony.  (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1008–1009 ["'Generally it is true that the

9

testimony of a witness indicating that he or she does not remember an event is not inconsistent with a prior statement describing the event. [Citation.] "But justice will not be promoted by a ritualistic invocation of this rule of evidence. Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement [citation], and the same principle governs the case of the forgetful""'].) Thus, we disagree with the trial court's rationale for admitting the hearsay statement as a prior consistent statement. Nonetheless, because J.M.'s hearsay statement was admissible as a prior *inconsistent* statement of a witness who had not been excused from giving further testimony in the action, it was admissible under a different hearsay exception. (Evid. Code, §§ 770, subd. (b), 1235.) Thus, we find no error in the admission of J.M.'s hearsay statement.

Defendant also argues that Wheeler's expert opinion of sexual penetration relayed inadmissible hearsay to the jury in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). We disagree. Our Supreme Court held that an expert cannot "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.) We have concluded that J.M.'s prior statement to Cannon was admissible under the prior inconsistent statement exception to the hearsay rule. *Sanchez* is thus inapplicable.

Defendant alternatively argues that *if* we conclude that J.M.'s hearsay statement was inadmissible, but harmless error, there was insufficient evidence to support the jury's finding that defendant had sexually penetrated J.M. We find no error, harmless or otherwise, in the trial court's evidentiary ruling. It

10

is unclear whether defendant raises an independent challenge to the sufficiency of the evidence as a basis for reversal. We will assume that he does and consider the merits of his argument.

"'When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Our review must "'presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.'" [Citation.] Even where, as here, the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ""be reasonably reconciled with the defendant's innocence."" [Citations.] The relevant inquiry is whether, in light of all the evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)

"Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (See CALCRIM No. 1003; § 263.) J.M. had injury to her vagina and hymen, which was consistent with penetration by a penis, finger, or object. Further, blood and defendant's semen were found inside J.M.'s vulva. Thus, even without J.M.'s hearsay statement, substantial evidence supported the jury's verdicts.

11

B.    *Exclusion of Character Evidence*

Defendant next contends the trial court erred by excluding photographs depicting J.M.'s affinity for alcohol and marijuana. Specifically, defendant challenges the court's exclusion of the following proposed exhibits:

(1)    a photograph of J.M. with a six-pack of beer, which had the words "'I'm happiest when I'm with you, my sweetheart, #Budweiser,'" dated February 5 of an undisclosed year;

(2)    a photograph, dated June 25, 2016, of a bottle of "purple potion" and the words "'Killer potion,'" referring to a mixture of alcohol with pharmaceutical drugs such as cough syrup;

(3)    a photograph, dated May 21, 2016, depicting J.M. drinking from a bottle of cognac;

(4)    a photograph from J.M.'s Instagram account, showing someone holding a marijuana joint;

(5)    a photograph from J.M.'s Instagram account depicting a six-pack of beer and potato chips;

(6)    a photograph from J.M.'s Instagram account depicting her holding a bottle of apple cider with the phrase "'day off, chellas'" written on it.  "Chellas" is Spanish slang for beer;

(7)    a photograph from J.M.'s Instagram account showing her holding a martini or cocktail;

(8)    a photograph from J.M.'s Instagram account depicting her holding a six-pack of beer; and

(9)    a photograph of J.M. with a young man holding a marijuana joint.

12

In excluding these exhibits, the trial court stated that defense counsel had already obtained evidence of J.M.'s drinking behavior from J.M.'s own testimony, and "in my opinion, you're simply trying to sully up or dirty up the victim in this case by having joints and alcohol . . . ."

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review the exclusion of evidence pursuant to Evidence Code section 352 for an abuse of discretion. (*People v. Hamilton* (2009) 45 Cal.4th 863, 944.)

Defendant argues the photographs of J.M. with alcohol and marijuana were necessary to demonstrate that J.M. was an experienced drinker and marijuana user. We disagree. Defendant elicited testimony from J.M. that she was an "experienced" drinker who drank alcohol whenever she went out. He also introduced a text in which J.M. said that she liked to smoke marijuana and a photograph from J.M.'s Instagram account in which she opined on the best type of shot glass. The additional photographs that defendant sought to introduce therefore were cumulative and the trial court did not abuse its discretion in excluding such evidence. (*People v. Mincey* (1992) 2 Cal.4th 408, 439.)

Even if we were to assume that the trial court erred by excluding the exhibits, we would find any such error to be harmless. Defendant amply demonstrated that J.M. was an experienced drinker who used marijuana and thus suffered no

prejudice when he was precluded from introducing additional exhibits to prove these points.

C.    *Admission of Evidence of Photographic Lineup*

Defendant argues that the trial court erred by not excluding from evidence J.M.'s identification of him in a six-pack photographic lineup.  Defense counsel objected to the introduction of such evidence, asserting that the photographic lineup's probative value was minimal because identity was not in dispute, and any probative value was substantially outweighed by undue prejudice.  According to defendant, the photographic lineup suggested "a certain level of criminality."  The court overruled the objection.  We find no error.

Defendant argues the photographic lineup was not relevant because "identity was not an issue in this case."  Defendant is incorrect.  Because defendant pleaded not guilty, all the elements of the charged crimes, including the identity of the perpetrator, were at issue at trial.  (*People v. Cowan* (2010) 50 Cal.4th 401, 476 (*Cowan*); *People v. Walker* (2006) 139 Cal.App.4th 782, 796.)  The "'prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element.'"  (*Cowan, supra*, 50 Cal.4th at p. 476, quoting *Estelle v. McGuire* (1991) 502 U.S. 62, 69.)

We also reject defendant's contention that the probative value of J.M.'s identification was outweighed by unfair prejudice.  Defendant argues that we should assume that the jurors "speculated that [he] may have been identified from a mug shot."  We decline to make any such assumption.  First, there was no evidence that the photograph of defendant that was included in

14

the lineup was of a mug shot.  To the contrary, Bailey testified that he believed defendant's photograph was taken from DMV records.  Further, the court instructed the jury that "'[e]vidence' is the sworn testimony of witnesses, the exhibits admitted into evidence and anything else [the court] told [them] to consider as evidence"; and that "[i]n deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial."  "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions."  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)  We find no abuse of discretion in the court's evidentiary ruling.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


We concur:


BAKER, Acting P. J.


MOOR, J.

16